UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAURICE OLIVER,<br><br>    Plaintiff,<br><br>  vs.<br><br>T. KLEE,<br><br>    Defendant. | Case No:  C 11-3663 SBA (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket 27, 58 |

Plaintiff Maurice P. Olivier, who is currently incarcerated at Pleasant Valley State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983 alleging constitutional violations stemming from his previous incarceration at the California Training Facility ("CTF"). He alleges that Defendant CTF Clothing Supervisor T. Klee was deliberately indifferent to his welfare by failing to provide him with basic necessities, i.e., "a jacket during the winter" for a two week period from December 27, 2010 through January 10, 2011. The parties are now before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket 27.) Having read and considered the papers submitted, and being fully informed, the Court GRANTS Defendant's motion for summary judgment.[1]

## **DISCUSSION**

### I.    REQUEST FOR JUDICIAL NOTICE

Both parties have submitted requests for judicial notice in connection with the pending summary judgment motion. Each request is discussed below.

---

[1] Plaintiff has filed a "Motion Requesting Copy of Court's Local Rule 37-2, Pursuant to Fed. R. Civ. P. Rule 77-80." (Docket 58.) In view of the Court's summary judgment ruling, Plaintiff's motion is denied as moot.

**A.    DEFENDANT**

Defendant requests the Court to take judicial notice of the following:

1. A map printed from MapQuest.com depicting the distance between Soledad, California and Salinas, California, (Def.'s Req. Jud. Notice, Ex. A);

2. Climatological Data from the National Oceanic and Atmospheric Administration showing the high and low temperatures and precipitation at Salinas, California in December 2010 and January 2011, (Id., Exs. B, C); and

3. A publication entitled, "How Flu Spreads," printed from the Centers for Disease Control and Prevention website, (Id., Ex. D).

Finding good cause, the Court GRANTS Defendant's request and takes judicial notice of all of the above, to the extent permitted by Federal of Evidence Rule 201, as necessary to resolve the instant motion. See Fed. R. Evid. 201(b)(2) & (f); United States v. Coutchavlis, 260 F.3d 1149 (9th Cir. 2001) (court may take judicial notice of a map); United States v. Foreman, 369 F.3d 776, 786 (4th Cir. 2004) (permitting courts to take judicial notice of weather conditions); GC v. Wyndham Hotels & Resorts, LLC, 829 F. Supp. 2d 609 (M.D. Tenn. 2011) (judicial notice taken of Centers for Disease Control and Prevention publication).

**B.    PLAINTIFF**

Plaintiff requests judicial notice of the August 4, 2009 opinion in pending class action Plata v. Brown, No. 01-cv-01351 THE (N.D. Cal.). Plata is a class action brought by California state inmates concerning the constitutional adequacy of the California Department of Corrections and Rehabilitation's ("CDCR") provision of inmate medical health care. In his request for judicial notice, Plaintiff has quoted from Judge Henderson's order, but has not submitted any documents from Plata. Defendant does not object to Plaintiff's request. The Court therefore GRANTS Plaintiff's request.

**II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A.    FACTUAL BACKGROUND**

Defendant has supported his motion for summary judgment with his declaration and

- 2 -

various declarations from other CTF prison officials.  Plaintiff's complaint is verified; therefore, it functions as a declaration in response to a summary judgment motion.  See Schroeder v. McDonald, 55 F.3d 454, 460 & n.10, 11 (9th Cir. 1995).  In addition, Plaintiff has filed a verified opposition to Defendant's motion for summary judgment and supporting declarations.  Finally, Plaintiff has attached his 602 inmate appeal form relating to the deliberate indifference claim in this action, as well as each reviewer's response at the various levels of review.  (Docket 4.)

The following facts are undisputed unless otherwise indicated.

### 1. Background on the Parties

During the relevant time frame—from December 2010 through January 2011—Plaintiff was housed in Ranier Hall at CTF.  (Compl. at 1.)  During that time frame, Defendant was the "Materials and Stores Supervisor I" at CTF, and was working in the North Facility clothing room on December 27, 2010, when Plaintiff came to pick-up his state-issued clothing.  (Klee Decl. ¶¶ 1, 2.)

### 2. Plaintiff's Clothing

On December 27, 2010, Plaintiff received three pairs of jeans, three long-sleeved shirts, three T-shirts, three pairs of shorts, five pairs of socks, and a pair of tennis shoes.  (Id. ¶ 2.)  Plaintiff was not given a jacket because there were no jackets available in his size, 2X-Large.  (Id.)

Plaintiff does not dispute that Defendant informed him that there were no jackets in his size at that time.  (Compl. at 1.)  Plaintiff has provided a declaration from another inmate, Orrin Carr, who states that he worked at the "CTF-North clothing room shortly after arriving [] in September 2009 and was hired as a clerk on October 15, 2009."  (Carr Decl. ¶ 6.)  Inmate Carr confirms that there was a "shortage of jackets" during the "cool summer of 2010 and the cold rainy winter of 2010/2011."  (Id., ¶ 7.)

Because Defendant did not have any size 2X-Large jackets in the North Facility clothing room, he called his supervisor to check the inventory in the warehouse, as well as the South Facility and Central Facility clothing rooms, but there were no 2X-Large jackets

available. (Klee Decl. ¶ 2.) The California Prison Industry Authority supplies the jackets, and size 2X-Large jackets were on back-order. (Id.) Defendant offered Plaintiff jackets in sizes regular and 1X-Large, but Plaintiff indicated that he did not want to try those jackets. (Id.) Defendant had a few jackets available in much larger sizes, but he did not give Plaintiff one of those jackets because he understood that, for safety and security reasons, CTF correctional staff would not permit Plaintiff to wear a jacket that large. (Id.) Inmates are not allowed to wear clothing that is excessively large on them because they can conceal weapons or other contraband in the clothing that can be used to harm inmates and staff, and jeopardize the safety of the institution. (Pherigo Decl. ¶ 3.)

Plaintiff also had a thermal top when he arrived at CTF. (Cox Decl. ¶ 2, Ex. A.) Plaintiff received a size 2X-Large jacket on January 10, 2011. (Klee Decl. ¶ 4.)

### 3. Weather Conditions at Salinas, California

Plaintiff claims that during the time-frame at issue, he had to "go outside without a jacket in freezing temperatures," (Compl. at 3), and was thus "subject to the conditions of rain, cold and wind at CTF," (Pl. Decl. ¶ 2).

Salinas, California is located approximately twenty-five miles from Soledad, California, where CTF is located. (Def.'s Req. Jud. Notice, Ex. A.) The Court takes judicial notice that the following temperatures (submitted by Defendant and not objected to by Plaintiff) recorded at the Salinas Airport from December 27, 2010 to January 10, 2011 "ranged from daily maximum temperatures of 52 - 63 degrees Fahrenheit, and daily minimum temperatures of 35 - 45 degrees Fahrenheit, with the exception of January 10, 2011, when the minimum temperature was 31 degrees [Fahrenheit]." (Id., Exs. B, C.) Similarly, the Court takes judicial notice that from December 27, 2010 to January 10, 2011, there was precipitation at the Salinas Airport only for four days, and it ranged from .41 inches to .71 inches. (Id.)

### 4. Time Plaintiff Spent Outdoors

Plaintiff claims that he had to endure these "freezing temperatures" without a jacket "[d]uring chow, institutional appointments, yard, law library, and emergency alarms . . . ."

- 4 -

(Compl. at 3.) He adds that he "had to lay flat on the ground in the rain and cold for extended periods of time." (Id.) During the relevant time frame, Plaintiff went to the dining hall for eighteen meals. (Pherigo Decl. ¶ 2.) The distance from Plaintiff's housing unit to the dining hall is approximately 341 feet. (Raso Decl. ¶ 2.) Plaintiff may have had to wait in a line outside the dining hall for up to five minutes. (Pherigo Decl. ¶ 2.)

Plaintiff visited the law library a total of five times during the relevant time frame—i.e., on four afternoons and one morning between December 27, 2010 and January 10, 2011. (Marshak Decl. ¶¶ 3, 5; Ex. A.) Plaintiff did not wait outside to access the library on three of those visits, but he may have had to wait outside for up to an hour for two visits. (Id. ¶ 4.) The distance from Plaintiff's housing unit to the law library is approximately 646 feet. (Raso Decl. ¶ 3.)

Plaintiff was seen by medical staff twice between December 27, 2010 and January 10, 2011. (Nygaard Decl., Ex. A at 18, 19.) The distance from Plaintiff's housing unit to the medical clinic is about 897 feet. (Raso Decl. ¶ 4.)

Plaintiff alleges that an emergency alarm sounded, and he was forced to lay on the ground for over an hour on December 28, 2010. (Docket 4 at 5, 7.) Plaintiff alleges that he had to lie on the ground for about thirty minutes during another alarm on December 30, 2010. (Id.)

### 5. Plaintiff's Resulting Injuries

Plaintiff alleges that the "harsh and degrading treatment" of not being issued a jacket during the relevant time frame "resulted in injuries of back pain, muscle cramps, flu, emotional distress and anxiety." (Compl. at 3A.)

On January 10, 2011, and again on January 13, 2011, Plaintiff submitted a Health Care Services Request Form, complaining that he had contracted a sore throat and cough because he had not received a jacket until January 10, 2011. (Nygaard Decl., Ex. A at 15, 17.) In response to his request, a nurse examined Plaintiff on January 14, 2011. (Id. at 15-17.) The nurse noted that Plaintiff exhibited minimal coughing during the assessment, that his nose was clear, that his throat showed no abnormalities, and that his lungs were clear.

1  (Id. at 16-17.)  The nurse also noted, however, that Plaintiff had an ineffective breathing
2  pattern, and prescribed acetaminophen, antihistamine nasal decongestant, and warm salt-
3  water gurgles.  (Id.)  The nurse instructed Plaintiff to drink plenty of fluids, return to the
4  clinic in three days if there was no improvement, and to resubmit a Health Care Services
5  Request Form if his symptoms persisted or his condition deteriorated.  (Id.)   However,
6  Plaintiff did not return to the clinic nor request further medical attention for his sore throat
7  or cough.  (Id., Ex. A.)
8        Plaintiff was next examined by CTF medical staff on February 16, 2011.  There is
9  no indication that he further complained of a sore throat or cough.  (Id. at 14.)
10       Plaintiff also claims that he "sustained permanent Fibromyalgia back pain injuries
11 from his body being in and subjected to various unorthodox positions of proning out in
12 cold, windy and wet weather."  (Pl.'s Decl. ¶ 7 (footnote added).)  However, Plaintiff's
13 medical record does not indicate that he complained of back pain or was seen for symptoms
14 relating to Fibromyalgia between December 2010 and February 2011.  (Nygaard Decl., Ex.
15 A.)
16   **B.    LEGAL STANDARDS**
17      **1.    Summary Judgment**
18       Federal Rule of Civil Procedure 56 provides that a party may move for summary
19 judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P.
20 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no
21 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
22 law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant
23 bears the initial burden of demonstrating the basis for the motion and identifying the
24 portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions
25 on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,
26 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts
27 of materials in the record").  If the moving party meets this initial burden, the burden then
28 shifts to the non-moving party to present specific facts showing that there is a genuine issue

for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

### 2. Deliberate Indifference

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). The Amendment also imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. Farmer, 511 U.S. at 832; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious, Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, id. (citing Wilson, 501 U.S. at 297).

**C.     DISCUSSION**

Plaintiff claims that Defendant was deliberately indifferent to his welfare by not issuing him a jacket for a period of about two weeks during the winter. (Compl. at 3.) Plaintiff avers that he had to go outside without a jacket in freezing temperatures "during chow, institutional appointments, yard, law library, and emergency alarm," and as a result suffered back pain, muscle cramps, the flu, emotional distress, and anxiety. (Id. at 3-4.) Plaintiff seeks compensatory and punitive damages. Defendant has moved for summary judgment on the ground that there are no material facts in dispute and that he is entitled to judgment as a matter of law.

### 1.     Sufficiently Serious Condition

In his Eighth Amendment challenge, Plaintiff must show an objectively, sufficiently serious, deprivation and that the prison official acted or failed to act with deliberate indifference. Farmer, 511 U.S. at 834 (citing Wilson, 501 U.S. at 297, 298). In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

"Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Id. (internal quotations omitted). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832 (citations omitted). The list of basic necessities that must be provided to inmates has long included clothing. See id.; Helling, 509 U.S. at 32; DeShaney, 489 U.S. at 198-99. "The denial of adequate clothing can inflict pain under the Eighth Amendment." Walker v. Sumner, 14 F.3d 1415, 1421 (9th Cir. 1994) (inmate who

1 alleged he did not receive a jacket and his own boots when he returned to prison did not
2 show a triable issue of fact because he did not describe the footwear he had received, did
3 "not allege that the weather conditions were such that the deprivation of a jacket inflicted
4 pain of a constitutional magnitude," and did not describe the clothing that he did have),
5 overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995); see also
6 Johnson, 217 F.3d at 729-32 (Eighth Amendment claim stated by inmates who, following
7 separate riots were kept outside without blankets or other coverings for four days in 70-94
8 degree temperatures on one occasion and for 17 hours on another occasion when
9 temperature fell to 22 degrees while riots were investigated; inmates also alleged
10 inadequate food, water, and toilet facilities).

11 An Eighth Amendment violation is more apt to be found when inmates are deprived
12 of clothing in extreme weather conditions. See e.g., Palmer v. Johnson, 193 F.3d 346, 354
13 (5th Cir. 1999) (denying motion for summary judgment based on qualified immunity where
14 inmates were reduced to digging in the dirt to construct earthen walls as barriers against
15 high winds while exposed for period of seventeen hours); Gordon v. Faber, 800 F. Supp.
16 797, 798 (N.D. Iowa 1992), aff'd 973 F.2d 686, 687-88 (8th Cir. 1992) (affirming finding
17 of unconstitutional deprivation where inmates forced to stand outdoors without hats or
18 gloves for more than one hour in sub-freezing weather with significant wind-chill factor);
19 Balla v. Idaho State Bd. of Corrections, 595 F. Supp. 1558, 1566, 1575 (D. Idaho 1984)
20 (finding constitutional violation when prison officials provided clothing that was "patently
21 insufficient" to guard against Idaho's winter temperatures).

22 Here, there is no evidence that there were extreme weather conditions at CTF during
23 the time period from December 27, 2010 through January 10, 2011, when Plaintiff did not
24 have a jacket. To the contrary, the record evidence shows that the climate was relatively
25 mild. Though Plaintiff complained that he suffered a sore throat and cough due to the lack
26 of a jacket, a nurse was unable to confirm his complaints other than to note minimal
27 coughing. The nurse did note that Plaintiff exhibited ineffective breathing and prescribed
28 him various medications. Although she instructed him to return in three days if he

1 experienced no improvement, Plaintiff did not seek any further treatment. The Court thus 2 finds that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether 3 he suffered from a serious condition attributable to the lack of a jacket.

### 2. Deliberate Indifference

Even if Plaintiff could show that he suffered from a serious condition, there is no genuine issue of fact regarding whether Defendant was deliberately indifferent. A "prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188 (9th Cir. 2002).

Here, Plaintiff has failed to show a triable issue of fact that Defendant acted with deliberate indifference. There is no evidence before the Court that Defendant knew of and disregarded an excessive risk to Plaintiff's health and safety. As an initial matter, there is no evidence that Defendant knew that it was too cold for Plaintiff to be without a jacket until one became available, or that the lack of a jacket carried a substantial risk of serious harm. (Decl. Klee ¶ 3.) In addition, the record shows, and the parties do not dispute that, Defendant was unable to issue Plaintiff a jacket on December 27, 2010 because there was no available jacket in Plaintiff's size. Moreover, due to safety and security reasons, Defendant could not issue Plaintiff a jacket in a larger size. The record shows that Defendant called his supervisor to check the inventory in the warehouse, and also called two other clothing rooms in the prison in an attempt to locate a jacket in Plaintiff's size. (Id. ¶ 2.) When Defendant was unable to locate a jacket in Plaintiff's size, he offered Plaintiff smaller-sized jackets, but Plaintiff refused to try them. (Id.) Defendant also endeavored to contact inmates who were paroling soon to return their jackets early. (Id. ¶ 4.) Defendant then made a note to contact Plaintiff as soon as a jacket in his size became

available. (Id.) These actions do not show deliberate indifference. On these undisputed facts, no reasonable jury could return a verdict against Defendant.

Accordingly, Plaintiff has not shown the existence of a triable issue of fact that Defendant acted with deliberate indifference to Plaintiff's health and safety. Therefore, Defendant is entitled to judgment as a matter of law on the Eighth Amendment claim.

### D. QUALIFIED IMMUNITY

Defendant argues, in the alternative, that summary judgment is warranted because, as a government official, he is entitled to qualified immunity from Plaintiff's Eighth Amendment claim. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier and holding that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case). Where there is no clearly established law that certain conduct constitutes a constitutional violation, a defendant cannot be on notice that such conduct is unlawful. Rodis v. County of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009) (applying Pearson to find no clearly established right before evaluating whether there was a deprivation). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

Viewing the evidence in the light most favorable to Plaintiff, the Court has

determined above that Defendant's actions did not amount to an Eighth Amendment violation, as Plaintiff fails to raise a triable issue of fact as to whether (1) he suffered from a serious condition attributable to the lack of a jacket or (2) Defendant acted with deliberate indifference to Plaintiff's health and safety by denying him a jacket. However, even if this Court had found that Plaintiff suffered a constitutional violation, it concludes that a reasonable officer could not have believed that Defendant's actions—failing to provide Plaintiff with a jacket in his size until one became available two weeks later—were unlawful in light of clearly established law and the information that Defendant possessed at the time of the incident. See Saucier, 533 U.S. at 205. The record shows that there was no available jacket in Plaintiff's size, and Defendant could not offer Plaintiff a larger jacket for safety and security reasons. Defendant offered a smaller-sized jacket to Plaintiff, but he refused the offer. Defendant provided him with an appropriately-sized jacket as soon as that clothing became available. Even assuming that there was a constitutional violation, a reasonable officer in Defendant's position would not have found his actions unlawful, especially in light of the mild weather conditions at CTF during the time period. Therefore, Defendant is entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

**CONCLUSION**

For the foregoing reasons,

IT IS HEREBY ORDERED THAT:

1. Plaintiff and Defendant's Requests for Judicial Notice (Docket 34, 59) are GRANTED.

2. Defendant's Motion for Summary Judgment (Docket 27) is GRANTED.

3. Plaintiff's "Motion Requesting Copy of Court's Local Rule 37-2, Pursuant to Fed. R. Civ. P. Rule 77-80" (Docket 58) is DENIED as moot.

4. The Clerk of the Court shall enter judgment in favor of Defendant, terminate all other pending matters, and close the file. All parties shall bear their own costs.

5. This Order terminates all pending matters, including but not limited to Docket 27 and 58.

IT IS SO ORDERED.

Dated: September 30, 2013

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

G:\PRO-SE\SBA\CR.11\Oliver3663.docx